IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Lavelle Taylor, | ) |
|       *Plaintiff,* | ) |
| -vs- | ) No. 17-cv-____ |
| City of Chicago, Detective James O'Brien, and Detective Gerald Carroll, | ) *(jury demand)* |
|       *Defendants.* | ) |

## COMPLAINT

Plaintiff, by counsel, alleges as follows:

1. This is a civil action arising under 42 U.S.C. § 1983. Plaintiff invokes the jurisdiction of the Court pursuant to 28 U.S.C. § 1343.

2. Plaintiff Lavelle Taylor is a resident of the Northern District of Illinois.

3. Defendant City of Chicago is an Illinois municipal corporation; plaintiff seeks to impose liability on the City for damages he incurred as a result of municipal policies and practices.

4. Defendant James O'Brien was, at all times relevant, a detective in the Chicago police department. Plaintiff sues O'Brien in his individual capacity.

5. Defendant Gerald Carroll was, at all times relevant, a detective in the Chicago police department. Plaintiff sues Carroll in his individual capacity.

6. At about 7:30 p.m. on August 11, 1996, a person named Bruce Carter was shot and killed by Lowell Taylor, plaintiff's brother.

7. Plaintiff had nothing to do with the shooting.

8. Chicago police officers arrested plaintiff in the evening of August 11, 1996 as part of the investigation into the Carter shooting.

9. Defendants O'Brien and Carroll interrogated plaintiff, who truthfully stated that he had nothing to do with the shooting.

10. After plaintiff denied involvement in the shooting, defendant O'Brien fabricated evidence against plaintiff by causing Keith Baker, a person who was present at the scene of the incident, to make the false statement that he had observed plaintiff pass a firearm to Lowell Taylor immediately before the shooting.

11. Defendant Carroll knew, at all times relevant, that O'Brien had fabricated the evidence described above.

12. Defendant Carroll, acting in conformance with the Chicago "code of silence," described with greater specificity below, remained silent

about O'Brien's wrongdoing, thereby failing to intervene to prevent the violation of plaintiff's federal constitutional rights.

13. At all times relevant, the City of Chicago has known that defendant O'Brien frequently misused his office to fabricate evidence against persons he suspected of having committed crimes:

    a. The City has received 36 allegations of fabrication of evidence, including coerced confessions, against Detective O'Brien, that occurred between 1989 and 2002.

    b. An official government report issued by the Illinois Torture Inquiry and Relief Commission identified Detective O'Brien as a detective who had engaged in various acts of misconduct to concoct evidence against persons he suspected of having committed a crime;

    c. In 1993, defendant O'Brien was one of several officers who extracted a false confession from an arrestee named Fred Ewing.

    d. In 1997, defendant O'Brien was one of several officers who caused an eyewitness to wrongfully identify a person named Robert Wilson as her assailant.

14. Defendant City of Chicago turned a blind eye to O'Brien's repeated misconduct, consistent with its widespread practice of failing to discipline, supervise, and control its officers.

15. At the time defendant O'Brien fabricated evidence against plaintiff, policymakers for the City of Chicago knew that the Chicago Police Department's policies and customs for disciplining, supervising, and controlling its officers were inadequate and caused police misconduct.

16. Despite their knowledge of the City's failed policies and customs for disciplining, supervising, and controlling its officers, the policymakers failed to take action to remedy these problems.

17. At all times relevant, the City of Chicago has known and encouraged a "code of silence" among police officers employed by the City of Chicago. An officer who violated the code of silence would be severely penalized by the Department.

18. The City of Chicago, at all times relevant, has trained police officers at its Police Academy not to break the "code of silence." Officers are instructed that "Blue is Blue. You stick together. If something occurs on the street that you don't think is proper, you go with the flow. And after that situation, if you have an issue with that officer or what happened, you can confront them. If you don't feel comfortable working with them any-

more, you can go to the watch commander and request a new partner. But you never break the code of silence."

19. A federal jury found in *Obrycka v. City of Chicago et al.*, No. 07-cv-2372 (N.D. Ill.), that "the City [of Chicago] had a widespread custom and/or practice of failing to investigate and/or discipline its officers and/or code of silence."

20. As summarized by the United States Department of Justice in its official report entitled "Investigation of the Chicago Police Department," January 13, 2017, 75:

> a. "One way to cover up police misconduct is when officers affirmatively lie about it or intentionally omit material facts."
>
> b. "The Mayor has acknowledged that a 'code of silence' exists within CPD, and his opinion is shared by current officers and former high-level CPD officials interviewed during our investigation."
>
> c. "Indeed, in an interview made public in December 2016, the President of the police officer's union admitted to such a code of silence within CPD, saying 'there's a code of silence everywhere, everybody has it

. . . so why would the [Chicago Police] be any different.'"

21. The United States Department of Justice concluded that "a code of silence exists, and officers and community members know it." Report at 75.

22. In December 2015, Chicago Mayor Rahm Emanuel acknowledged the continued existence of the code of silence within the Chicago Police Department; Emanuel, speaking in his capacity as Mayor, admitted that the "code of silence" leads to a culture where extreme acts of abuse are tolerated.

23. In April 2016, the City's Police Accountability Task Force found that the code of silence "is institutionalized and reinforced by CPD rules and policies that are also baked into the labor agreements between the various police unions and the City."

24. As the direct and proximate result of the above described fabrication of evidence, code of silence, and failure to discipline, plaintiff was found guilty of murder and confined in the penitentiary to serve a term of imprisonment of 35 years.

25. On May 13, 2015, following the grant of relief pursuant to 28 U.S.C. § 2254, plaintiff was re-tried and found not guilty, thereby ending nearly two decades of wrongful imprisonment.

26. As a result of the foregoing, plaintiff was deprived of rights secured by the Fourth and Fourteenth Amendments.

27. Plaintiff demands trial by trial.

WHEREFORE plaintiff requests that appropriate compensatory damages be awarded against all defendants and appropriate punitive damages be awarded against defendants O'Brien and Carroll, and that the costs of this action, including fees and costs, be taxed against defendants.

/s/ Kenneth N. Flaxman
KENNETH N. FLAXMAN
ARDC No. 830399
JOEL A. FLAXMAN
200 S Michigan Ave Ste 201
Chicago, IL 60604-2430
(312) 427-3200

JOHN MAGRISSO
Midwest Center for Justice, Ltd.
P.O. Box 6528
Evanston, IL 60204-6528

*Attorneys for Plaintiff*