# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LAVELLE TAYLOR, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 17-cv-03642 ) ) Judge Andrea R. Wood |
| CITY OF CHICAGO, et al., | ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Lavelle Taylor brings this action under 42 U.S.C. § 1983 claiming that his Fourth and Fourteenth Amendment rights were violated when he was convicted based on an allegedly fabricated witness statement procured by two Chicago Police Department detectives. Taylor further alleges that the City of Chicago was complicit in this misconduct because it enforced a "code of silence" within its police department intended to discourage police officers from speaking up about instances of police misconduct. After spending 15 years in prison, Taylor was released from custody following a federal *habeas corpus* hearing and acquitted following a retrial. The City of Chicago and former Detectives James O'Brien and Gerald Carroll ("Defendants") now move to dismiss all of Taylor's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). (Defs.' Joint Mot. to Dismiss, Dkt. No. 22.) For the following reasons, Defendants' motion to dismiss is granted in part and denied in part.

## BACKGROUND[1]

On August 11, 1996, Taylor's brother shot and killed a man named Bruce Carter. (Compl. ¶ 6, Dkt. No. 1.) Hours later, Taylor was taken into custody and questioned by Detectives O'Brien

---

[1] For purposes of deciding the motion to dismiss, the Court accepts the facts alleged in the Complaint as true and views them in the light most favorable to Taylor. *See, e.g.*, *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443–44 (7th Cir. 2009).

and Carroll regarding Carter's murder. (*Id.* ¶ 8.) During the interrogation, Taylor truthfully maintained that he was not involved in Carter's death. (*Id.* ¶ 9.) Despite Taylor's denial, O'Brien caused Keith Baker, a witness who was present during the shooting, to make a false statement claiming that Taylor had passed a firearm to his brother just before the shooting. (*Id.* ¶ 10.) While Carroll knew that O'Brien had fabricated the statement incriminating Taylor, he failed to correct or otherwise notify anybody of O'Brien's wrongdoing. (*Id.* ¶¶ 11–12.)

According to Taylor, Carroll's silence was characteristic of a "code of silence" enforced throughout the Chicago Police Department at the time of O'Brien's fabrication. (*Id.* ¶¶ 17–18.) Indeed, Taylor alleges that the City of Chicago knew about and encouraged this code of silence among its police officers and would severely penalize any officer who failed to abide by the code. (*Id.* ¶ 17.) Moreover, when officers were trained at the Police Academy, they were instructed about the importance of the code and told that:

> Blue is Blue. You stick together. If something occurs on the street that you don't think is proper, you go with the flow. And after that situation, if you have an issue with that officer or what happened, you can confront them. If you don't feel comfortable working with them anymore, you can go to the watch commander and request a new partner. But you never break the code of silence.

(*Id.* ¶ 18.)

According to Taylor, the existence of this code of silence has been corroborated by the United States Department of Justice and acknowledged by the president of Chicago's police officers union. (*Id.* ¶ 20–21.) Moreover, the current Mayor of Chicago, Rahm Emmanuel, has admitted the existence of a "code of silence" and acknowledged attendant police misconduct fostered by the code. Chicago's Police Accountability Task Force[2] also found that a code of

---

[2] The Chicago Police Accountability Task Force was created and "charged with developing comprehensive findings with specific recommendations for change in the short, interim and long-term within the Chicago Police Department." *What is the Task Force*, Chicago Police Accountability Task Force, http://chicagopatf.org/about/what-is-police-accountability-task-force/ (last visited Aug. 24, 2018).

silence has been "institutionalized and reinforced by [Chicago Police Department] rules and policies that are also baked into labor agreements between the various police unions and the City." (*Id.* ¶ 23.) And in *Obrycka v. City of Chicago*, No. 07-cv-2372 (N.D. Ill. 2012) (Dkt. Nos. 682, 683), a federal jury found that "the City had a widespread custom and/or practice of failing to investigate and/or discipline its officers and/or code of silence." (*Id.* ¶ 19.)

The code of silence enabled O'Brien to fabricate evidence against suspects repeatedly with impunity. (*Id.* ¶ 13–14.) Indeed, the "City has received 36 allegations of fabrication of evidence, including coerced confessions, against Detective O'Brien, that occurred between 1989 and 2002." (*Id.* ¶ 13.) The Illinois Torture Inquiry and Relief Commission also identified O'Brien as a detective who had "engaged in various acts of misconduct to concoct evidence against persons he suspected of having committed a crime." (*Id.*) Yet, consistent with the code of silence, the City of Chicago failed to discipline, supervise, or control O'Brien's repeated instances of misconduct. (*Id.* ¶ 14.)

As a result of O'Brien's misconduct and Carroll's silence—both of which the City of Chicago failed to discipline or supervise—Taylor was detained, tried, and convicted of murder. (*Id.* ¶ 24.) He was sentenced to a 35-year term of imprisonment. (*Id.*) In 2010, Taylor filed a petition for a writ of *habeas corpus*, pursuant to 28 U.S.C. § 2254, arguing that he received ineffective assistance of counsel. (*Id.* ¶ 25; *see also Taylor v. Grounds*, 721 F.3d 809, 811 (7th Cir. 2013)[3]). While the district court denied his petition, the Seventh Circuit reversed that decision and remanded the matter for an evidentiary hearing. *Taylor*, 721 F.3d at 812. On August 26, 2013, Taylor was released from custody pending resolution of his *habeas* proceedings. (Defs.' Joint Mot. to Dismiss at 2, Ex. A.) He was granted a writ of *habeas corpus* on February 28, 2014 and

---

[3] Any document outside of the complaint referenced in this section comes from court records, of which the court may take judicial notice and consider in connection with a Rule 12(b)(6) motion. *See Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080–81 (7th Cir. 2009).

ordered released from custody, "unless within 120 days of the entry of this judgment the State announces its intention . . . to retry Taylor." (*Id.* at 2, Ex. B.) The State opted for a retrial, and Taylor was acquitted on May 13, 2015. (Compl. ¶ 25.)

Taylor subsequently filed the present action against O'Brien and Carroll, in their individual capacities, and the City of Chicago on May 15, 2017. He claims that Defendants deprived him of his rights under the Fourth and Fourteenth Amendments to the United States Constitution by imprisoning him on the basis of fabricated evidence. Defendants now move to dismiss this action for failure to state a claim.[4]

## DISCUSSION

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual allegations, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

### I.  Fourteenth Amendment Due Process Claim

Defendants argue that Taylor cannot state a claim under the due process clause of the Fourteenth Amendment based on fabrication of evidence because his allegations in support of the claim are conclusory and, in any case, such a claim is foreclosed by Seventh Circuit precedent.

---

[4] After Defendants filed their reply brief, Taylor sought leave to file a sur-reply (Dkt. No. 35), which was granted (Dkt. No. 37). Defendants then moved for leave to file a response to the sur-reply (Dkt. No. 38), which the Court took under advisement (Dkt. No. 42). That motion is now granted.

4

Furthermore, Defendants assert that the claim must be dismissed regardless of the merits because it is time-barred under the statute of limitations.

### A. Sufficiency of Allegations

As an initial matter, Defendants appear to suggest that Taylor's allegation of fabrication is a conclusory statement not entitled to the presumption of truth. But a review of the Complaint reveals that Taylor has alleged sufficient specific facts to support his fabrication claim. *See McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) ("We have interpreted *Twombly* and *Iqbal* to require the plaintiff to provide some specific facts to support the legal claims asserted in the complaint" (internal quotation marks and alterations omitted)). Taylor alleges that O'Brien fabricated evidence by causing a witness, Baker, to state falsely that Taylor handed his brother a firearm before his brother shot Carter. (Compl. ¶ 10.) This allegation identifies who fabricated the evidence, how the evidence was fabricated, and the content of the fabricated evidence. It is further bolstered by specific facts demonstrating numerous other instances of evidence fabrication allegedly committed by O'Brien. Finally, Taylor alleges that as "the direct and proximate result of the . . . fabrication of evidence, code of silence, and failure to discipline, [he] was found guilty of murder and confined in the penitentiary to serve a term of imprisonment of 35 years." (*Id.* ¶ 24.) Taken together, Taylor's allegations in the Complaint "give enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). Thus, the allegations are sufficient to state a claim.

### B. Legal Viability of a Fabrication of Evidence Claim

The core of Defendants' legal argument for dismissal is that Taylor cannot bring a federal due process claim for fabrication of evidence because Illinois law provides a sufficient remedy. This argument is based on the Seventh Circuit's decision in *Newsome v. McCabe*, 256 F.3d 747

(7th Cir. 2001). But Defendants misconstrue *Newsome*. And subsequent Seventh Circuit cases recognizing a standalone due process fabrication of evidence claim do not conflict with this precedent.

*Newsome* involved a § 1983 claim brought by a man who had served 15 years in prison for a murder he did not commit. He sued five Chicago Police Department officers, including two that he alleged, among other things, failed to disclose that they fabricated evidence by coaching witnesses to select the plaintiff's picture from a lineup despite their earlier identifications from a book of mug shots that did not contain his photo. *Newsome*, 256 F.3d at 749. The plaintiff in *Newsome* brought a federal due process malicious prosecution claim against the officers for their failure to halt his criminal prosecution. *Id.* However, the Seventh Circuit held that there was no federal constitutional tort for malicious prosecution when such a claim existed under the relevant state law. *Id.* at 750.

Since *Newsome*, there has been a series of Seventh Circuit cases that have "consistently held that a police officer who manufactures false evidence against a criminal defendant violates due process if that evidence is later used to deprive the defendant of her liberty in some way." *Whitlock v. Brueggemann*, 682 F.3d 567, 580 (7th Cir. 2012). Recently, the Seventh Circuit set up what at first glance may appear to be a conflict with *Newsome* with its decision in *Avery v. City of Milwaukee*, 847 F.3d 433 (7th Cir. 2017). In *Avery*, the plaintiff was convicted based on a fake confession and the false testimony of three jailhouse informants. *Id.* at 435–36. While a jury found for the plaintiff on his due process fabrication of evidence claim, the district court set aside the verdict, finding that that claim was not viable given the availability of a state law remedy for malicious prosecution. The Seventh Circuit reversed the decision, however, holding that the "availability of a state-law remedy for malicious prosecution doesn't defeat a federal due-process

6

claim against an officer who fabricates evidence that is later used to obtain a wrongful conviction." *Id.* at 441.

As Defendants point out, in deciding *Avery*, the Seventh Circuit did not meet *en banc* to overrule *Newsome* and that precedent remains good law in this Circuit that is binding on this Court. Nonetheless, Defendants insist that *Avery* improperly overruled *Newsome* in violation of Seventh Circuit Rule 40(e)[5] and therefore cannot be treated as binding precedent. Further, they argue that the other Seventh Circuit panels recognizing a fabrication of evidence claim were able to sidestep *Newsome* because none reached the issue of whether an adequate state law remedy would defeat the claims. Defendants are wrong on both counts.

As a preliminary matter, even if *Avery* did implicitly overrule *Newsome*, it is not a district court's role to police the Seventh Circuit's compliance with its own internal rules of procedure by disregarding what even Defendants acknowledge is on-point precedent. In any case, while *Avery* and the line of cases recognizing a fabrication of evidence due process claim may seem at first blush to conflict with *Newsome*, the two lines of authority can be reconciled. The error in Defendants' analysis lies in their assertion that Taylor is bringing the same kind of due process claim that was rejected in *Newsome*. While the facts in *Newsome* are analogous to the facts here, the plaintiff in *Newsome* explicitly styled his claim as one for "malicious prosecution." *See Newsome*, 256 F.3d at 749. However, the Seventh Circuit also recognizes a standalone due process claim for fabrication of evidence. This due process claim exists separate and apart from a malicious prosecution claim.

---

[5] Seventh Circuit Rule 40(e) requires that a

> proposed opinion approved by a panel of this court adopting a position which would overrule a prior decision of this court or create a conflict between or among circuits shall not be published unless it is first circulated among the active members of this court and a majority of them do not vote to rehear *en banc* the issue of whether the position should be adopted.

Whereas a malicious prosecution claim is founded on the constitutional right not to be prosecuted without probable cause, *Newsome*, 256 F.3d at 750, a fabrication of evidence claim is based on a defendant's right to not be deprived of liberty on the basis of false evidence, *see Avery*, 847 F.3d at 439; *Fields v. Wharrie*, 740 F.3d 1107, 1114 (7th Cir. 2014) (*Fields II*). Defendants insist that the force of the decisions (other than *Avery*) recognizing the existence of a fabrication of evidence claim is diminished because, in each instance, the fabrication claim ultimately was not permitted to proceed. In most of those decisions, however, the plaintiff had been acquitted. *See, e.g.*, *Bianchi v. McQueen*, 818 F.3d 309, 319 (7th Cir. 2016); *Saunders-El v. Rohde*, 778 F.3d 556, 561 (7th Cir. 2015). Thus, those courts simply understood that a key element of such a constitutional claim is the deprivation of liberty——*i.e.*, conviction. *See Bianchi*, 818 F.3d at 319 ("A deprivation of liberty is a necessary element of a due-process claim premised on allegations of evidence fabrication."). Where, as here, there has been a deprivation of liberty, a claim has been adequately stated.[6]

In short, *Newsome* does not "stand[] for the proposition that fabricating evidence does not violate a defendant's due process." *Saunders-El*, 778 F.3d at 560. Instead, it "merely establish[es] that allegations that sound in malicious prosecution must be brought pursuant to state law." *Id.* Indeed, even the cases that Defendants cite for the proposition that *Newsome* remains good law nonetheless recognize the viability of a properly pleaded fabrication of evidence claim. *See, e.g.*, *Alexander v. McKinney*, 692 F.3d 553, 557 (7th Cir. 2012). And other courts in this District applying this line of cases have recognized that *Newsome* does not preclude a separate fabrication of evidence claim. *See Bolden v. City of Chicago*, No. 17 CV 417, 2017 WL 8186995, at *5–6

---

[6] By contrast, this Court's decision in *Henderson v. McCarthy*, No. 14-cv-09905, 2016 WL 6135706 (N.D. Ill. Oct. 20, 2016), centered on whether a plaintiff who "was **not convicted** in a state criminal proceeding may nonetheless bring a § 1983 claim for due process violations based on the fabrication of evidence used as a basis for his prosecution." *Id.* at *5 (emphasis added). Consistent with Seventh Circuit precedent, the answer was "no."

(N.D. Ill. Dec. 12, 2017) (dismissing a federal malicious prosecution claim based on *Newsome* but allowing a due process fabrication of evidence claim to proceed). Thus, Defendants' argument fails because *Newsome* does not establish "categorically, that a claim of evidence fabrication cannot form the basis of a due process claim under § 1983 and must instead be brought as a state law malicious prosecution claim." *Saunders-El*, 778 F.3d at 560.

### C. Statute of Limitations

While Taylor has stated a valid due process claim for fabrication of evidence, the claim nonetheless cannot survive if it was not filed within the statute of limitations. Neither party disputes that Illinois law supplies a two-year statute of limitations for § 1983 claims. *See Kalimara v. Ill. Dep't of Corrs.*, 879 F.2d 276 (7th Cir. 1989). Defendants argue, however, that Taylor's fabrication of evidence claim accrued when he was first arrested based on fabricated evidence, well outside of the two-year limitations period. This is plainly incorrect.

Under the delayed-accrual rule recognized by the Supreme Court in *Heck v. Humphrey*, 512 U.S. 477 (1994), a § 1983 claim challenging the lawfulness of conviction or confinement does not accrue until "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of *habeas corpus*." *Id.* at 486–87. Unless and until the conviction or sentence has been invalidated, a plaintiff has no cognizable § 1983 claim. *Id.* at 487. Thus, as the Seventh Circuit has recognized, a due process claim challenging the lawfulness of a criminal conviction accrues on the date the conviction was set aside. *See Dominguez v. Hendley*, 545 F.3d 585, 589 (7th Cir. 2008).

Defendants insist that even applying the *Heck* rule of delayed accrual, Taylor's due process claim is still untimely because it was filed more than two years after he was granted a writ

9

of *habeas corpus*. Taylor, on the other hand, argues that his claim is timely because it only accrued after he was acquitted following retrial.[7] The express language of *Heck* would seem to support Defendants' view, as it states that a § 1983 claim accrues when the conviction is "called into question by a federal court's issuance of a writ of *habeas corpus*." *Heck*, 512 U.S. 486–87. Yet the *habeas* court did not unconditionally invalidate Taylor's conviction. Rather, it released him from custody contingent on the State's determination whether or not to retry him. *Taylor v. Grounds*, No. 10-cv-7489 (N.D. Ill. Feb. 28, 2014). The State did retry him, and Taylor was acquitted.

Seventh Circuit precedent post-*Heck* makes clear that given those circumstances, Taylor's claim did not accrue until his acquittal. In *Julian v. Hanna*, 732 F.3d 842, 845 (7th Cir. 2013), the Seventh Circuit addressed the argument that the accrual date for a federal due process malicious prosecution claim was the day the conviction was reversed. The Seventh Circuit disagreed, holding that because the plaintiff was subject to retrial, the criminal case had not terminated in his favor "[u]ntil the retrial was held, and ended favorably to him." *Id.* Similarly, the plaintiff in *Johnson v. Dossey*, 515 F.3d 778 (7th Cir. 2008), was a former prisoner who had successfully moved for a new trial and was released from custody pending that trial. The Seventh Circuit held that the plaintiff's due process claim accrued on the date that she was acquitted in her retrial. *Id.* at 782. Even *Newsome* lends support. The plaintiff in that case had obtained collateral relief in state court and his conviction was vacated. Yet the Court found that his § 1983 claim accrued only once he received a pardon from the governor. *Newsome*, 256 F.3d at 749.

Moreover, the Ninth Circuit addressed the proper accrual date for a fabrication of evidence claim very similar to that here. The plaintiff in *Bradford v. Scherschligt*, 803 F.3d 382, 383–84

---

[7] Taylor was acquitted on May 13, 2015 but he filed his complaint on May 15, 2017. Nonetheless, Taylor's claim would be timely if it accrued on acquittal because May 13, 2017 fell on a Saturday and May 15 was the first weekday after that date. *See* Fed. R. Civ. P. 6(a)(1)(c).

10

(9th Cir. 2015), sued the detective he alleged deliberately fabricated evidence that led to his imprisonment. When DNA evidence exonerated him, he was released from custody and petitioned to have his conviction vacated. *Id.* at 385. His petition was granted, but the court permitted the prosecution to pursue a new trial. *Id.* The plaintiff was then acquitted in the retrial. *Id.* The Ninth Circuit held that the plaintiff's § 1983 action accrued on the date of his acquittal, rather than the date the conviction was vacated, stating that the "claim seeking to vindicate his right to be free from those criminal charges based on the allegedly fabricated evidence did not accrue until the charges were fully and finally resolved and could no longer be brought against him." *Id.* at 388–89.[8]

Thus, the overwhelming weight of authority weighs in favor of finding that Taylor's § 1983 claim accrued only once he was acquitted following retrial. For that reason, his Fourteenth Amendment claim cannot be dismissed as time-barred.

**II.     Fourth Amendment Claim**

   **A.     Sufficiency of Allegations**

Defendants next argue that Taylor's Fourth Amendment claim lacks the essential facts to state a claim. That argument is well-taken. As established in *Manuel v. City of Joliet*, 137 S. Ct. 911, 917 (2017), a person has a Fourth Amendment right not to be detained based solely on false evidence rather than probable cause. That right extends not just to the time a person spends detained prior to the commencement of legal process (*i.e.*, arraignment) but also to his post-legal-process pretrial detention. *Id.* at 919–20. Once a trial occurs, however, "the Fourth Amendment drops out: a person challenging the sufficiency of evidence to support both a conviction and any

---

[8] The Ninth Circuit did note that it might find that the claim accrued on the date the conviction was vacated "if the conviction was set aside in a manner precluding the government from maintaining charges on evidence presented at the initial trial." *Bradford*, 803 F.3d at 388. Here, however, there is no indication that Taylor was not subject to retrial on the same evidence, as his *habeas* claim was predicated not on the fabricated evidence, but on the ineffective assistance of trial counsel.

ensuing incarceration does so under the Due Process Clause of the Fourteenth Amendment." *Id.* at 920 n.8. For that reason, it is essential that Taylor allege that he was detained following the fabrication of evidence and prior to his conviction at trial. As Defendants correctly point out, the complaint contains no such allegations. Instead, Taylor alleges that he was arrested and then questioned by the individual Defendants. (Compl. ¶¶ 8–9.) Only after his interrogation does Taylor claim that O'Brien fabricated evidence (*id.* ¶ 10.), and he makes no allegations whatsoever concerning any pretrial detention following the fabrication. Had sufficient allegations appeared in the complaint, the Court would have no issue finding that Taylor stated a Fourth Amendment claim. Absent such allegations, Taylor's Fourth Amendment claim must be dismissed.

### B. Statute of Limitations

Whether Taylor will be permitted the opportunity to amend his Fourth Amendment claim to supply the missing allegations depends on whether his claim was filed within the statute of limitations. The accrual date for a Fourth Amendment claim based on pretrial detention without probable cause is an issue left open by the Supreme Court in *Manuel*. It remanded the action to the Seventh Circuit to determine in the first instance "the elements of, or rules applicable to such a claim." *Manuel*, 137 S. Ct. 922. The Seventh Circuit has not yet issued a ruling.

For present purposes, this Court will follow the lead of eight Courts of Appeals that have incorporated a "favorable termination" accrual date, which also conforms to the Seventh Circuit's practice for due process claims. *See Manuel*, 137 S. Ct. 917 & n.4, 921 & n.9. This approach also accords with the practice of courts in this District that have had to determine the accrual date for similar Fourth Amendment claims post-*Manuel*. *E.g.*, *Powell v. City of Chicago*, No. 17-cv-5156, 2018 WL 1211576, at *4–5 (N.D. Ill. Mar. 8, 2018); *Bolden*, 2017 WL 8186995, at *6.

Thus, this Court rejects Defendants' contention that Taylor's Fourth Amendment claim either accrued immediately upon his arrest or upon his conviction. The logic of *Manuel* precludes the running of the statute of limitations immediately upon Taylor's arrest because the constitutional violation persists through the duration of pretrial detention. *See Manuel*, 137 S. Ct. at 918 (finding that legal process "cannot extinguish the detainee's Fourth Amendment claim"). *Evans v. Pokson*, 603 F.3d 362 (7th Cir. 2010), does not compel a conclusion to the contrary. That case simply holds that a claim of unlawful search and seizure that does not imply the invalidity of a subsequent conviction accrues immediately. *Id.* at 364; *Hoeft v. Anderson*, 409 F. App'x 15, 18 (7th Cir. 2011).[9] By contrast, Taylor's fabrication of evidence claim goes directly to the validity of his conviction. Therefore, the *Heck* delayed-accrual rule applies.

This Court is also not persuaded that the Fourth Amendment claim accrued upon the termination of Taylor's pretrial detention. The Supreme Court's reasoning in *Wallace v. Kato*, 549 U.S. 384 (2007), is inapplicable to Taylor's claim. There, the Supreme Court held that the accrual date for a false arrest or false imprisonment § 1983 claim accrued when legal process was initiated. *Id.* at 391. However, the result in *Wallace* was compelled by "the common law's distinctive treatment of the torts of false arrest and false imprisonment." *Id.* at 388. Any false arrest or false imprisonment claim "ends once the victim becomes held pursuant to" legal process. *Id.* at 389. By contrast, here, Taylor may have remained detained in violation of the Fourth Amendment even after the initiation of legal process. And once he was convicted, the *Heck* rule of delayed accrual applied. Consequently, if Taylor is able amend his complaint to adequately plead that he was subject to pretrial detention, the statute of limitations would not stand as an obstacle to his Fourth Amendment claim. The claim is therefore dismissed without prejudice.

---

[9] *Hoeft* is an unpublished Seventh Circuit order issued after January 1, 2007. Although not precedential, the order provides a useful explanation of the import of *Evans*.

### III. *Monell* Claim

Finally, the Court concludes that Taylor has properly stated a *Monell* claim against the City of Chicago based on fabrication of evidence. Under *Monell v. Department of Social Services of New York*, 436 U.S. 658, 694 (1978), a municipality may be held liable on a § 1983 claim only "when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible for under § 1983." To state a *Monell* claim, a plaintiff must show: "(1) that he suffered a constitutional injury, and (2) that the City authorized or maintained a custom of approving the unconstitutional conduct." *Petty v. City of Chicago*, 754 F.3d 416, 424 (7th Cir. 2014).

As discussed above, Taylor has sufficiently alleged a constitutional injury. Moreover, he has numerous specific factual allegations showing that the City authorized and had a custom approving of this unconstitutional conduct. Specifically, he alleges that the City knew that O'Brien frequently fabricated evidence. Moreover, the City authorized and maintained a code of silence amongst its police department that discouraged police officers from blowing the whistle on such misconduct. These allegations are supported by a report from the Department of Justice, (Compl. ¶ 20-21), a factual finding from a federal jury, (*id.* ¶19), a public acknowledgment from the Mayor, (*id.* ¶ 22), and a finding made by the City's Police Accountability Task Force, (*id.* ¶ 23). Courts in this District have found similar allegations arising from the Chicago Police Department's code of silence sufficient to state a *Monell* claim against the City. *See, e.g.*, *Powell*, 2018 WL 1211576, at *9; *Bolden*, 2017 WL 8186995, at *5–6. This Court follows suit here. Thus, Defendants' motion to dismiss Taylor's *Monell* claim is denied.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted in part and denied in part. The motion is granted with respect to the Fourth Amendment claim and otherwise denied. The Fourth Amendment claim is dismissed without prejudice. Taylor is granted leave to file an amended complaint remedying the issues identified herein.

ENTERED:

Dated: August 27, 2018

_____
Andrea R. Wood
United States District Judge